UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MALVAMEL LENNON and CYNTHIA
AURELIO on behalf of themselves and those
similarly situated,

        Plaintiffs,                              CASE NO.:

vs.

CLAIMS QUESTIONS, LLC, d/b/a ROL
INSURANCE CONSULTING, a Florida
Limited Liability Company, and CITIZENS
PROPERTY INSURANCE CORPORATION
OF FLORIDA,

        Defendants.                  /

## COLLECTIVE ACTION COMPLAINT

Plaintiffs, MALVAMEL LENNON and CYNTHIA AURELIO on behalf of themselves and those similarly situated, by and through undersigned counsel, files this Complaint against Defendants, CLAIMS QUESTIONS, LLC ("CQ"), and CITIZENS PROPERTY INSURANCE CORPORATION OF FLORIDA ("Citizens") (collectively, "Defendants") and states as follows:

### I.    NATURE OF THE ACTION

1.    Plaintiffs allege, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they and all similarly situated class members are: (i) entitled to unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay, as required by law, (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq*; (iii) entitled to reasonable attorneys' fees and costs pursuant to the FLSA; and (iv) entitled declaratory relief pursuant to 28 U.S.C. §2201.

2.    As described in more detail below, Citizens and CQ jointly employ "Litigation

Specialists" to provide adjusting services on Citizens' accounts through a contract between Citizens and CQ. These Litigation Specialists, and other similarly situated workers, are classified as "independent contractors" and paid a day rate for all hours worked with no additional overtime compensation paid. These workers work long hours to perform their work, and operate under very tight direction, control and supervision of both CQ and Citizens. These workers have been misclassified as independent contractors under the FLSA and should have been classified as employees. As such, they are entitled to overtime compensation for overtime hours worked.

## II.  PARTIES

3. CQ does business as "ROL Insurance Consulting," and operates an independent adjusting firm providing full service handling of residential, commercial, and liability exposures with a specialized focus on earth movement and sinkhole claims. *See* www.rol-ins.com.

4. CQ provides specialized claim handling services via an adjusting team consisting of highly trained individuals whose experience includes working for major insurance carriers as managers, staff adjusters, and reinspectors. *See* www.rol-ins.com/default/services.

5. CQ is in the business of providing specialized claim handling services for property losses with a focus on earth movement and sinkhole claims. Additionally, CQ provides sinkhole claim investigations, including inspections, correspondence with policyholders, vendor assignments, coverage evaluations assistance, and reserve and payment assistance.

6. CQ is a Florida for-profit limited liability company that operates and conducts business in Duval County, as well as throughout Florida, and is therefore within the jurisdiction of this Court.

7. Citizens was created by the Florida Legislature in August 2002 as a not-for-

profit, tax-exempt, government entity. Its mission is to provide insurance protection to Florida policyholders who are entitled to but are unable to find property insurance coverage in the private market. *See* www.citizensfla.com/who-we-are.

8. Citizens operates according to statutory requirements created by the Florida Legislature and a Plan of Operation approved by the Florida Financial Services Commission. The corporation is governed by a Board of Governors that administers its Plan of Operation. Three members of the Board are appointed by Florida's Governor, and the President of the Florida Senate, Speaker of the Florida House and the state's Chief Financial Officer each appoint two members. *Id.*

9. In approximately September 2012, Citizens approved a plan to provide up to $350 million in loans to private companies willing to take over policies by promising low interest loans in exchange for taking on Citizens' policies for at least 10 years. State Senator Mike Fasano described the plan as the biggest bailout in Florida history[1].

10. Citizens operates and conducts business within Duval County as well as throughout Florida, and is therefore within the jurisdiction of this Court.

11. Through the operation of Citizens, hundreds of thousands of insurance claims are processed.

12. CQ contracts with Citizens for catastrophe adjusting services and employs teams of adjusters to provide the adjusting services.

13. Specifically, in 2015, Citizens issued Request for Proposal No. 15-0022 for a competitive solicitation for independent appraisal services. As a result, a notice of intent to award contracts to multiple vendors was published on November 10, 2015. Citizens' staff

---

[1] *See*, Florida's Citizens' Plan for Loans to Private Insurers Criticized, https://www.insurancejournal.com/news/southeast/2012/09/10/262399.htm.

3

evaluated the solicitations and awarded contracts to seven (7) vendors. One of these contracts was awarded to CQ.[2]

14. In or about early 2017, Citizens, in an effort to ensure it could respond appropriately in a hurricane with minimal disruption to its "Litigated Business" units, endeavored to award separate contracts to independent adjustment services specifically for claims that were in litigation.

15. On March 20, 2017, Citizens issued Request for Proposal No. 17-0002 for "litigated" independent adjusting services. Upon conclusion of the evaluation process an intent to award contracts to multiple vendors was published on May 17, 2017. As a result, Citizens awarded one of five contracts to CQ.[3]

16. Plaintiff, MALVAMEL LENNON, worked for Defendants from approximately March 2018 through approximately January 2019 as a Litigation Specialist in Jacksonville, Florida.

17. Plaintiff, CYNTHIA AURELIO, worked for Defendants from approximately February 2018 through approximately June 2018 as a Litigation Specialist in Jacksonville, Florida.

### III. JURISDICTION AND VENUE

18. Jurisdiction in this Court is proper as the claims are brought pursuant to the FLSA to recover unpaid overtime wages, an additional equal amount as liquidated damages, obtain declaratory relief, and reasonable attorneys' fees and costs.

19. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. §1331, arising under 29 U.S.C. §216(b).

---

[2] *See*, Minutes of the Claims Committee Meeting for November 30, 2015. Attached "B"
[3] *See*, Minutes of the Claims Committee Meeting for June 15, 2017. Attached "C"

20. Venue is proper in this judicial district because at least one of Defendants maintains offices within this judicial district and the events giving rise to Plaintiffs' claims occurred in this judicial district.

## IV. COVERAGE

21. CQ is an enterprise as defined within section 3(r)(1) of the FLSA.

22. CITIZENS is an enterprise as defined within section 3(r)(1) of the FLSA. *Id.*

23. At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce and have at least two employees that handle or work on goods or materials that have been moved in or produced for commerce. 29 U.S.C. § 203(s).

24. Specifically, Defendants had two or more employees who regularly handled goods or materials that have been moved in or produced for commerce, such as laptops, telephones, headsets, notepads, pens/pencils, binders, office furniture, and other office tools/materials.

25. At all times relevant hereto, each Defendant had an annual gross volume of sales or did business of more than $500,000.00 per year.

26. Therefore, at all material times relevant to this action, each Defendant was an enterprise covered by the FLSA, and as defined by 29 U.S.C. §203(r) and 203(s).

## V. CQ AND CITIZENS JOINTLY EMPLOYED PLAINTIFFS

27. At all times material hereto Plaintiffs and the class members were jointly employed by Defendants within the meaning of FLSA and were misclassified as independent contractors.

28. The FLSA defines the term "employer" to broadly include "any person acting directly or indirectly in the interest of an employer in relation to any employee". 29 U.S.C.

5

203(d).

29. Plaintiffs and the class members were recruited and hired by CQ and Citizens to perform adjusting duties out of CQ's physical offices and under the supervision of Citizens' supervisors who were also present in CQ's offices.

30. Plaintiffs and all class members submitted to a background check, whereupon Citizens dictated whether Plaintiffs and the class members could be hired.

31. Throughout their employment, Plaintiffs and the class members performed work on behalf of CQ and Citizens and were paid a day rate by CQ.

32. At all times material hereto, CQ and Citizens determined the nature and amount of Plaintiffs' and the class members' pay.

33. To ensure the highest customer service, satisfaction and companywide uniformity, CQ is contractually obligated as a business partner of Citizens to maintain compliance in key critical areas of performance. While Citizens provides oversite to each team, CQ is responsible to maintain compliance for all deployed parties with Citizens and for any parties in direct contact with Citizens' staff. *See* Exhibit "D", *Work Performance Expectations/Office Protocol*

34. CQ and Citizens exist for the common business purpose of providing insurance coverage to its policyholders while also processing, evaluating, litigating and paying out claims to their policyholders.

35. Citizens and CQ supervisors reviewed and oversaw the work performed by Plaintiffs and other class members and gave them daily instruction regarding their work.

36. Plaintiffs and the class members were/are required to seek approval from Citizens on matters of importance with respect to adjusting services on pending cases.

37. Plaintiffs and the class members were trained by CQ and Citizens on Citizens'

required policies and procedures.

38. CQ and Citizens would critique and criticize Plaintiffs' and the class members' work if it did not meet these policies and procedures.

39. CQ provided Plaintiffs and the class members the tools and equipment needed to perform their work (i.e. computers, telephones, etc.).

40. Plaintiffs and the class members could not employ their own workers to perform their work.

41. On information and belief, CQ is directly and largely dependent on their independent adjustment services contracts with Citizens.

42. On information and belief, CQ, is solely dependent on payments made by Citizens to make regularly scheduled payroll to the Plaintiffs and similarly situated Litigation Specialists.

43. Without Plaintiffs and the class members performing their job duties, CQ does not get paid by Citizens.

44. Without Plaintiffs and the class members performing their job duties, Citizens does not administer the claims it handles for its policy holders.

45. Plaintiffs and the class members' work is integral to both CQ and Citizens.

46. Plaintiffs and similarly situated class members are dependent on Citizens, at a minimum, because Citizens provides: (i) oversite, supervision, and guidance to them; (ii) the work product to them in the form of lawsuits/claims; and (iii) the payment of wages through Citizens' payments under the contract with CQ.

47. At all times material to this action CQ and Citizens also directly or indirectly controlled other aspects of the day to day employment of Plaintiffs and all class members, including: (i) timekeeping; (ii) payroll; (iii) disciplinary actions; (iv) employment policies and

procedures; (v) scheduling and hours; (vi) terms of compensation; (vii) human resources; (viii) hiring and firing; (vii) working conditions; and (viii) manner and method of such Litigation Specialists performance of their duties.

48. Based on the foregoing, Citizens is an employer as defined under the FLSA, and jointly employed Plaintiffs and the class members.

49. Based on the foregoing, CQ is an employer as defined under the FLSA and jointly employed Plaintiffs and the class members which worked under its contract with Citizens.

### III. **FLSA VIOLATIONS**

50. The Fair Labor Standard Act of 1938, 29 U.S.C. § 201 et, seq. ("FLSA") was enacted to ensure "the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The FLSA establishes minimum wage and overtime requirements for covered employees to achieve this broad remedial purpose. 29 U.S.C. §§ 206, 207. These provisions, and the private right of action granted to employees, prevent employers from pilfering rightfully earned wages of employees. *See, Billingsley v. Citi Trends Inc.*, 13-12561, 2014 WL 1199501 (11th Cir. Mar. 25, 2014).

51. Defendants failed to pay Plaintiffs and all class members proper overtime compensation because Defendants misclassified Plaintiffs and all class members as independent contractors and purported to pay them a "day-rate" with no overtime premiums despite Plaintiffs and those similarly situated worked in excess of 40 hours per week.

52. Plaintiffs and all class members have all been victimized by Defendants' common policy and plan to violate their rights under the FLSA by denying overtime compensation for overtime hours worked in a given workweek.

53. CQ is one of several contractors who work for and are under the control of

Citizens through the contracts described above.

54. During the course of their employment, Plaintiffs and all class members regularly worked in excess of forty (40) hours in individual workweeks.

55. Instead of paying overtime compensation, Defendants paid Plaintiffs and all class members purported "day rates," based on the number of days they worked irrespective of the number of hours they worked each week.

56. Plaintiffs and all class members typically worked from 8:00 a.m. until 6:00 p.m. Monday through Friday and received one thirty minute lunch break.

57. Furthermore, Plaintiffs and all class members typically worked from 7:00 a.m. to 3:00 p.m. on Saturday and Sunday and did not receive any lunch breaks.

58. Plaintiffs and the class members were paid a flat rate of $437.50 per day for work performed.

59. Additionally, Defendants had a policy and practice of paying Plaintiffs a "half day" rate for days in which Plaintiffs did not work the entirety of the scheduled shift.

60. Therefore, to the extent overtime compensation is owed, Plaintiffs and the class members are entitled to an additional time and one-half overtime compensation versus "half-time" compensation.

61. Plaintiffs regularly worked more than forty (40) hours a week.

62. It was not uncommon for Plaintiffs to work between sixty (60) and sixty-five (65) hours (or more) in a given week.

63. All of Defendants' Litigation Specialists worked similar hours and are entitled to overtime compensation.

64. Plaintiffs bring this collective action to recover the unpaid overtime wages owed

to them and all others similarly situated on behalf of the following class:

> All Litigation Specialists, or other similarly situated adjustors, who were solely paid a purported "day rate" and who worked for any company, including CQ, that contracted with Citizens to provide adjustor services at any location within Florida, within the three year period preceding the filing of this Complaint

65. Plaintiffs and the class members were all Litigation Specialists misclassified as independent contractors and who performed the same or similar job duties as one another in that they provided insurance adjusting services at the direction and on behalf of Citizens and its contractors, including CQ.

66. Further, Plaintiffs and the members of the collective action were subjected to the same pay provisions in that they were all paid "day rates," but were not compensated at time-and-one-half for all hours worked in excess of 40 hours in a workweek.

67. The specific job titles or precise job responsibilities of each class member does not prevent collective treatment.

68. All class members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

69. Although the exact amount of damages may vary across class members, the damages for class members can be easily calculated by a formula.

70. The claims of all class members arise from a common nucleus of facts.

71. Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all class members.

72. Defendants' failure to pay overtime compensation as required by the FLSA results from generally applicable policies or practices of failing to assure that Plaintiffs and the class members are/were paid for overtime hours.

73. These policies and/or practices were uniformly applicable to Plaintiffs and the class members.

74. Application of these policies and/or practices does/did not depend on the personal circumstances of Plaintiffs or those joining this lawsuit.

75. Rather, the same policies and/or practices which resulted in the non-payment of overtime wages to Plaintiffs applied and continues to apply to all class members, regardless of which company they were paid through.

76. Defendants knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay overtime compensation with respect to Plaintiffs and the class members.

77. Defendants did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, 29 U.S.C. § 201, et seq., (c) Department of Labor Wage & Hour Opinion Letters or (d) the Code of Federal Regulations.

78. During the relevant period, Defendants violated § 7(a)(1) and § 15(a)(2), by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as aforesaid, for one or more workweeks without compensating such employees for their work at a rate of at least the time-and-one-half for all hours worked in excess of 40 hours in a work week.

79. Defendants have acted willfully in failing to pay Plaintiffs and the class members in accordance with the law.

80. Defendants have failed to maintain accurate records of Plaintiffs' and the class members' work hours in accordance with the law.

81. Because Defendants' records are inaccurate and/or inadequate, Plaintiffs and class

members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

## COUNT I

### Violation of the FLSA – Overtime Wages
*Plaintiffs on behalf of themselves and similarly situated employees*

82. Plaintiffs incorporate and re-allege paragraphs 1 through 81 as though set forth herein.

83. This Count arises from Defendants' violation of the FLSA for their failure to pay the Plaintiffs and all class members one and a half times their regular rate of pay for all time worked in excess of forty (40) hours in a work week.

84. As described above, Defendants misclassified Plaintiffs and all class members as independent contractors under the FLSA.

85. Defendants directed Plaintiffs to work, and Plaintiffs did work, in excess of forty (40) hours in individual workweeks within the three (3) years prior to filing this lawsuit.

86. The class members were also directed to work in excess of forty (40) hours in individual workweeks within the three (3) years prior to filing this lawsuit.

87. Plaintiffs and the class members are entitled to be paid overtime wages for all time worked in excess of forty (40) hours in individual workweeks.

88. Defendants did not pay Plaintiffs and the class members any overtime wages for all time worked in excess of forty (40) hours in individual workweeks.

89. Defendants' failure to pay Plaintiffs and the class members overtime wages for all

time worked in excess of forty (40) hours in individual workweeks was a violation of the FLSA.

90. Defendants failed to keep adequate records of Plaintiffs' and the class members' work hours and pay in violation of section 211(c) of the FLSA.

91. Plaintiffs and the class members are entitled to recover unpaid overtime wages for up to three (3) years prior to the filing of this lawsuit because Defendants' violation of the FLSA was willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment against Defendants as follows:

A. That the Court determine that this action may be maintained as a collective action pursuant to Section 216(b) of the FLSA;

B. A judgment in the amount of all unpaid overtime wages owed to Plaintiffs and the class members;

C. Liquidated damages in the amount equal to the unpaid overtime wages for Plaintiffs and all class members;

D. Reasonable attorneys' fees and costs of this action as provided by the FLSA;

E. Such other and further relief as this Court deems appropriate and just.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as a matter of right by jury.

DATED: __22nd__ day of March, 2019.

Respectfully submitted,

_____
C. RYAN MORGAN
FL BAR NO. 0015527
RMorgan@forthepeople.com
MATTHEW R. GUNTER
FL BAR NO. 0077459
MGunter@forthepeople.com
**MORGAN & MORGAN, P.A.**

13

20 N. ORANGE AVENUE, SUITE 1600
ORLANDO FL 32801
T: (407) 420-1414
F: (407) 867-4791

*Trial Counsel for Plaintiff, and all others similarly situated*